## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOROTHY BINNS,                    :
                                  :
      Plaintiff,               :
                                  :
v.                                :     CIVIL ACTION NO.
                                  :     1:07-CV-0070-RWS
CITY OF MARIETTA HOUSING          :
ASSISTANCE PROGRAM,               :
                                  :
      Defendant.               :

## <u>ORDER</u>

This case comes before the Court on Plaintiff's Motion for Partial Summary Judgment [115], Defendant's Motion for Summary Judgment [119], and Defendant's Amended Motion for Summary Judgment [121]. After reviewing the record, the Court enters the following Order.

As an initial matter, Defendant's Motion for Summary Judgment [119] is superseded by Defendant's Amended Motion for Summary Judgment [121]. Therefore, Defendant's Motion for Summary Judgment [119] is **DENIED AS MOOT**.

### Background

This case concerns the provision of benefits under the federal

government's Housing Choice Voucher Program ("Section 8"). The Section 8 program increases affordable housing choices for low-income households by allowing families to choose privately owned rental housing. 24 C.F.R. § 982.1(a). Qualified families can obtain vouchers from local public housing authorities ("PHA") to subsidize their monthly rent payment. Id. Plaintiff has brought suit under 28 U.S.C. §1983, alleging that Defendant unjustifiably denied her individual Section 8 housing application without according her due process. (Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl.'s Memo"), Dkt. No. [115-2] at 2). Plaintiff also alleges that Defendant retaliated against her for challenging another PHA's termination of her son's voucher and discriminated against her on the basis of her son's disability. Plaintiff alleges that Defendant's actions violate the Fair Housing Act, 42 U.S.C. § 3601 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. (Id.; Plaintiff's Amended Initial Disclosures, Dkt. No. [114] at 7).

Plaintiff and her son, Mr. Binns, received assistance from the Housing Authority of Cook County, Illinois ("HACC") for over ten years, with Plaintiff holding a voucher in her own name from 1985 to 1995. (Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"), Dkt. No. [121-2] at ¶¶ 1, 2).

2

Plaintiff receives social security disability payments for rheumatoid arthritis and severe depression and her son is developmentally disabled.[1]  (Plaintiff's Statement of Undisputed Facts ("Pl.'s Facts"), Dkt. No. [115-3] at ¶¶ 1, 3). Plaintiff moved to Georgia in 1995 and at that time transferred her voucher to her son and appointed her sister as his caregiver.  (Id. at ¶¶ 2, 5).  Shortly after her departure, Plaintiff's sister became terminally ill, leaving Mr. Binns unsupervised.  (Id. at ¶ 6).

In January 1999, Mr. Binns plead guilty to a violation of the Illinois Controlled Substances Act, resulting in the termination of his housing voucher by HACC.[2]  (Def.'s Facts, Dkt. No. [121-2] at ¶ 4).  Plaintiff, on behalf of her son, appealed HACC's decision and argued that her son did not understand the crime he had committed due to his mental capacity and should be entitled to a

---

[1] Mr. Binns's mental impairment causes him to function at the borderline range of cognitive growth and development.  (See Memorandum of Opinion of Judge Nowicki, Circuit Court of Cook County ("Circuit Court Opinion"), Ex. G to Defendant's Amended Motion for Summary Judgment ("Def.'s Motion"), Dkt. No. [121-11] at 1).  At his last psychological evaluation at age 17, his IQ was 72 and he was functioning academically at a third to fourth grade level.  (Id.).  Mr. Binns is now 40 years old and Plaintiff is 59 years old.  (See Plaintiff's 2003 Section 8 Application, Ex. B to Def.'s Motion, Dkt. No. [121-5]).

[2] Mr. Binns and his friend, Mr. Corbet, were at a bar when Mr. Corbet told Mr. Binns to hand a package to an individual that had just entered the bar.  (Circuit Court Opinion, Dkt. No. [121-11] at 2).  Not knowing the true contents of the package, Mr. Binns handed the package containing illegal drugs to the individual, who was an undercover police officer.  (Id.).

reasonable accommodation. (Pl.'s Facts, Dkt. No. [115-3] at ¶ 8). In May 2003, the Cook County Circuit Court found that Mr. Binns's mental disability caused his criminal behavior and that HACC should make the reasonable accommodation of transferring his housing voucher to Plaintiff and allowing her and Mr. Binns to live together. (Circuit Court Opinion, Dkt. No. [121-11] at 12-13). By the time the Circuit Court had issued its order, Mr. Binns had already moved to Georgia. (Pl.'s Facts, Dkt. No. [115-3] at ¶ 11).

Prior to the order transferring Mr. Binns' voucher to her, Plaintiff was living in a women's shelter in Cobb County, Georgia. (Id. at 10). In 2001, while the appeal was still pending in Cook County, Plaintiff and her son both applied to be placed on a waiting list for the City of Marietta's Section 8 Housing Assistance Program ("City's Section 8 Program" or "Program"). (Def.'s Facts, Dkt. No. [121-2] at ¶ 6). Plaintiff listed herself as the only family member on her individual application and was placed on Defendant's waiting list. (Pl.'s Facts, Dkt. No. [115-3] at ¶¶ 13, 14). On July 28, 2003, Plaintiff signed documents sent by HACC to begin the process of transferring Mr. Binns

4

former voucher, now in her name, to the City's Section 8 Program.[3]   (Id. at ¶ 15).

Plaintiff received a letter from the City's Section 8 Program dated August 19, 2003 informing her that she was being taken off the waiting list and instructing her to attend an eligibility interview on September 9, 2003.  (Id. at ¶ 17).  After receiving the letter, Plaintiff also received a call from Shantell Bowens, a housing advisor for the Program and the individual in charge of overseeing the porting process, instructing her to come to their office on September 11, 2003 to complete the porting of the voucher from HACC.  (Pl.'s Memo, Dkt. No. [115-2] at 6, 8).  Plaintiff informed Ms. Bowens that she was already scheduled to meet with the Program regarding her individual application.  (Id. at 6).  Ms. Bowens instructed Plaintiff to keep her already scheduled appointment.  (Id.).  On September 9, 2003, Plaintiff met with Ms. Bowens, Debbie Brown, who was the individual in charge of processing regular applications, and Jan Beall, Director of the City's Section 8 Program.  (Id. at 8; Pl.'s Facts, Dkt. No. [115-3] at ¶ 20).

_____

[3] 24 C.F.R. § 982.353(b) provides that "a voucher-holder or participant family has the right to receive tenant-based voucher assistance in accordance with requirements of this part to lease a unit outside the initial PHA jurisdiction, anywhere in the United States, in the jurisdiction of a PHA with a tenant-based program under this part."  This process is known as "porting."

AO 72A
(Rev.8/82)

The City's Section 8 Program also required Plaintiff, and her niece, Venus Binns, who was planning to live with Plaintiff, to obtain fingerprints. (Plaintiff's Response to Def.'s Motion ("Pl.'s Response"), Dkt. No. [130] at 7). Plaintiff alleges that she was told that if she and her niece were not fingerprinted, they could not attend an eligibility briefing on October 6, 2003. (Id.). Plaintiff alleges that she and her niece were unnecessarily sent from one location to the next in an attempt to have their fingerprints taken. (Id. at 7-8). Once Plaintiff was successful in having her fingerprints taken, she was told that she and her niece had to attend the meeting on October 6, 2003, or she would not receive the HACC voucher. (Id. at 8). When Plaintiff and her niece arrived at that meeting, she was told by other attendees that they were not required to have their fingerprints taken before attending. (Id. at 9). Also, Plaintiff alleges that upon arrival, a Program employee asked everyone except the "heads of households" to leave. (Id.). Plaintiff's niece had traveled by bus from St. Louis to attend the meeting. (Id. at 8)

On October 23, 2003, Plaintiff was told by Ms. Bowens that she "would not be receiving the City's Housing Program voucher," but instead "would have to Port the [HACC] voucher." (Plaintiff's Affidavit, Ex. D to Pl.'s Memo, Dkt. No. [115-7] at 6-7). Plaintiff asserts that she was not pleased with this decision

6

because the Circuit Court Opinion transferring the HACC voucher to her was being appealed, but since she needed to obtain housing she relented and allowed the City's Section 8 Program to port the HACC voucher. (Pl.'s Memo, Dkt. No. [115-2] at 9). Plaintiff was not given written notice of the denial of her individual application and was not given any opportunity for informal review or appeal of the decision. (Pl.'s Facts, Dkt. No. [115-3] at ¶¶ 29, 31).

The City's Section 8 Program ported the voucher from HACC and executed a Housing Assistance Payment contract ("HAP Contract") on behalf of the family by which HACC would be billed for the housing subsidy provided to Plaintiff and her family. (Ex. H to Pl.'s Memo, Dkt. No. [115-11]). The Family Report accompanying the HAP Contract listed Plaintiff as the Head of Household and also included Mr. Binns, Plaintiff's niece, and five other family members. (Id.). Plaintiff entered into the HAP contract and began leasing a five-bedroom unit in Marietta, Georgia in October 2003. (Def.'s Facts, Dkt. No. [121-2] at ¶ 13).

In March 2004, the Illinois Court of Appeals overturned the Circuit Court Opinion which transferred Mr. Binns's voucher to Plaintiff. (Pl.'s Facts, Dkt. No. [115-3] at ¶ 23). The court ordered that the HACC voucher be terminated. (Id.). On December 9, 2004, HACC notified the City's Section 8 Program that

Plaintiff's voucher would be terminated on Feb. 28, 2005 and HACC would no longer send payments to the Program after February 2005. (Def.'s Facts, Dkt. No. [121-2] at ¶ 15). On December 20, 2004, the Program mailed a letter to Plaintiff which stated:

> City of Marietta Section 8 Housing will terminate the [HAP Contract] and your Voucher/Certificate of Family Participation effective February 28, 2005 for the following reasons:
> THIS DECISION WAS MADE BASED ON THE DIRECTIVE FROM YOUR INITIAL HOUSING AUTHORITY.

(Ex. K to Pl.'s Memo, Dkt. No. [115-14]). Plaintiff was evicted from the home after her voucher was terminated. (Pl.'s Facts, Dkt. No. [115-3] at ¶ 26).

Plaintiff brought this suit alleging that the City's Section 8 Program violated her due process rights by not providing her with the required notice and opportunity for review and appeal following its decision to deny her individual voucher application. She also alleges that the Program discriminated against her based on her son's disability and retaliated against her for appealing the termination of her son's voucher by HACC.

## Discussion

Defendant has moved for summary judgment on Plaintiff's Section 1983 claim, as well as her ADA and FHA claims. Plaintiff has moved for summary

judgment on her Section 1983 claim.

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome

AO 72A
(Rev.8/82)

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical

doubt as to the material facts").

Finally, the filing of cross-motions for summary judgment does not give

rise to any presumption that no genuine issues of material fact exist.  Rather,

10

"[c]ross-motions must be considered separately, as each movant bears the

burden of establishing that no genuine issue of material fact exists and that it is

entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser

Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).

**I.      Plaintiff's Section 1983 Claim**

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 for the Program's

violations of her due process rights in denying her individual application for

Section 8 housing assistance.  Federal regulations require that:

> The PHA must give an applicant for participation
> prompt notice of a decision denying assistance to the
> applicant. The notice must contain a brief statement of
> the reasons for the PHA decision. The notice must
> also state that the applicant may request an informal
> review of the decision and must describe how to
> obtain the informal review.

24 C.F.R. § 92.554(a).  Federal regulations also establish the following

guidelines for the informal review process:

> (1) The review may be conducted by any person or
> persons designated by the PHA, other than a person
> who made or approved the decision under review or a
> subordinate of this person.
>
> (2) The applicant must be given an opportunity to
> present written or oral objections to the PHA decision.

> (3) The PHA must notify the applicant of the PHA
> final decision after the informal review, including a
> brief statement of the reasons for the final decision.

24 C.F.R. § 92.554(b).  Plaintiff asserts that her due process rights were violated when the Program failed to comply with these regulations after denying her individual voucher application.

Defendant responds that: 1) Plaintiff's Section 1983 claim is barred by the statute of limitations; and 2) Plaintiff cannot demonstrate that the Program denied her public housing assistance because she was granted a HAP Contract and the decision to port the HACC voucher as opposed to approving her individual application was an administrative decision, not subject to informal review.  (Def.'s Response, Dkt. No. [132] at 2).

While Section 1983 provides a federal cause of action, in some respects, such as the applicable statute of limitations, it looks to the law of the State in which the cause of action arose.  Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007).  The statute of limitations applicable to Section 1983 actions is that which the State provides for personal injury torts.  Id. (citing Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)).  In Georgia, the applicable limitations period is two years. O.C.G.A. § 9-3-33.  However, "the accrual date of a [Section] 1983 claim is a

AO 72A
(Rev.8/82)

question of federal law that is not resolved by reference to state law," but rather

is:

> governed by federal rules conforming in general to common-law tort principles. Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.

Wallace, 549 U.S. at 388.

Plaintiff argues that in order for an administrative action to be ripe for review, it must be "formalized and its effects felt in a concrete way by the challenging parties."  (Plaintiff's Reply in Support of Pl.'s Motion ("Pl.'s Reply"), Dkt. No. [136] at 4 (quoting Abbot Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681)).  Plaintiff argues that because she was provided housing by the Program through the HACC voucher until April 2005, the Program's denial of her individual application inflicted no practical harm upon her until she was actually evicted.  (Id. at 4-5).  Defendant argues that the conduct upon which Plaintiff's Section 1983 is based took place in October 2003, and it was at that time that her cause of action accrued.  (Def.'s Response, Dkt. No. [132 at 7]).

AO 72A
(Rev.8/82)

The Court agrees with Defendant that the violation of Plaintiff's due process rights occurred in October 2003, and it was at that time that her cause of action accrued. Therefore, the present action filed in December 2006, is barred by the two-year statute of limitations. Plaintiff herself states that she was told in October 2003 that she would have to port the HACC voucher in lieu of having her application approved by the City's Section 8 Program. (Pl.'s Affidavit, Dkt. No. [115-7] at 6-7). It is clear that this was not her preferred course of action and that she would rather have her own application approved because the HACC voucher faced the possibility of termination upon appeal. (Id. at 7 (noting reluctance to porting HACC voucher); Pl.'s Memo, Dkt. No. [115-2] at 9 (same)).

In October 2003, Plaintiff had a complete and present cause of action for Defendant's violation of the due process to which she was entitled following its decision not to approve her individual application. At that time Plaintiff had the ability to file suit and obtain relief mandating that Defendant provide the written notice and informal review to which she was entitled. That Plaintiff was provided housing, albeit through alternative means, does not negate Defendant's failure to provide proper process following the rejection of her individual application. The process to which Plaintiff was entitled should have

14

begun in October 2003, not following her eviction in April 2005.  Therefore,

Plaintiff's Section 1983 cause of action is barred by the applicable statute of

limitations and the Court need not address Defendant's alternative grounds for

dismissing this claim.  Plaintiff's Motion for Partial Summary Judgment [115]

is **DENIED** and Defendant's Amended Motion for Summary Judgment [121] as

to Plaintiff's Section 1983 claim is **GRANTED**.

## II.    Plaintiff's ADA Claim

Defendant also argues that Plaintiff's ADA claim is barred by the

applicable statute of limitations.   The statute of limitations applicable to

discrimination claims arising under Title II of ADA in Georgia is two years.

Everett v. Cobb Co. Sch. Dist., 138 F.3d 1407, 1409-10 ( 11th Cir. 1998).

Plaintiff's Response to Defendant's Motion states:

> Aside from the onerous finger printing process, which
> forced Plaintiff to travel all over Marietta searching
> for fingerprint cards, the City of Marietta forced
> Plaintiff to take a course of action it knew could
> potentially lead to the termination of Plaintiff's son's
> voucher.  The City knew about the statute of
> Plaintiff's son's voucher, ignored her own separate
> application and proceeded forward in porting her
> son's voucher with the result that it ultimately led to
> Plaintiff being evicted, through no fault of her own.

15

(Pl.'s Response, Dkt. No. [130] at 24).  Assuming the foregoing is true, even if

Defendant denied Plaintiff's application and forced her to port the HACC

voucher based on her son's handicap, the alleged actions took place in late

2003.  Therefore, for the reasons discussed more fully in Section I, above,

Plaintiff's ADA cause of action is barred by the statute of limitations.

Defendant's Amended Motion for Summary Judgment [121] is **GRANTED** as

to Plaintiff's ADA claim.  To the extent that Plaintiff has alleged a cause of

action for violation of the Rehabilitation Act, it is also barred by the statute of

limitations.  See Everett, 138 F.3d at 1409 ("Because causes of action brought

under Title II of the ADA and the Rehabilitation Act are essentially identical,

we will consider the two statutes simultaneously and apply the same statute of

limitations to both.").

## III.   Plaintiff's FHA Claims

The Fair Housing Act allows an aggrieved party to commence a civil

action within two years of the occurrence or termination of an alleged

discriminatory housing practice.[4]  42 U.S.C. § 3613(a)(1)(A).  Defendant does

---

[4] A party may commence an action under the FHA regardless of the status of
any complaint filed with HUD, unless a conciliation agreement has been reached.  42
U.S.C. § 3613(a)(2).  A conciliation agreement was not reached following the HUD
investigation and report.  (Amended Complaint, Dkt. No. [44] at ¶ 7).

16

not challenge Plaintiff's FHA claims based upon the statute of limitations,

recognizing that her claims were tolled while a HUD investigation was in

progress. (Def.'s Motion, Dkt. No. [121-3] at 12). Acts unlawful under

Sections 3604 and 3617 of the FHA constitute discriminatory housing practices.

42 U.S.C. § 3602(f). Plaintiff alleges that Defendant violated Sections 3604

and/or 3617 based upon her and her son's disabilities.

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to

otherwise make unavailable or deny, a dwelling to any buyer or renter because

of a handicap of . . . that buyer or renter . . . or any person associated with that

buyer or renter." 42 U.S.C. § 3604(f)(1). It is also unlawful "[t]o discriminate

against any person in the terms, conditions, or privileges of sale or rental of a

dwelling, or in the provision of services or facilities in connection with such

dwelling, because of a handicap of . . . that person . . . or any person associated

with that person." 42 U.S.C. § 3604(f)(2). The FHA also prohibits retaliation

for an individual's exercise of rights guaranteed by the Act. 42 U.S.C. § 3617.

Defendant asserts that Plaintiff has "failed to produce any evidence in this case

that she was discriminated against on the basis of her handicap status," or that

the "the City was attempting to retaliate for her actions in challenging the

17

termination of [Mr. Binns's] voucher."  (Def.'s Motion, Dkt. No. [121-3] at 16,

17).

Discrimination claims under the FHA are subject to the McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973),

burden-shifting analysis.  Massaro v. Mainlands Section 1 & 2 Civic Ass'n.,

Inc., 3 F.3d 1472, 1476 n.6 (11th Cir. 1993).  Under that analysis:

> First, the plaintiff has the burden of proving a prima
> facie case of discrimination by a preponderance of the
> evidence.  Second, if the plaintiff sufficiently
> establishes a prima facie case, the burden shifts to the
> defendant to articulate some legitimate,
> nondiscriminatory reason for its action.  Third, if the
> defendant satisfies this burden, the plaintiff has the
> opportunity to prove by a preponderance that the
> legitimate reasons asserted by the defendant are in fact
> mere pretext.

Blackwell, 908 F.2d at 870 (citation omitted).  To prove intentional

discrimination, "a plaintiff has the burden of showing that the defendants

actually intended or were improperly motivated in their decision to discriminate

against persons protected by the FHA."  Bonasera v. City of Norcross,  342 Fed.

Appx. 581, 584, (11th Cir. 2009) (citation omitted).

Plaintiff can establish a prima facie case of discrimination by showing:

(1) that she is a member of a protected class under the FHA; (2) that she was

qualified to receive Section 8 housing assistance; (3) that she was rejected despite her qualifications; and (4) that the Defendant continued to approve other applicants for Section 8 housing assistance.  See <u>Sallion v. SunTrust Bank</u>, 87 F. Supp. 2d 1323, 1329 (N.D. Ga. 2000) (setting forth steps needed to prove prima facie case of discrimination under FHA).  Despite Defendant's contention that Plaintiff was never denied housing assistance because she was provided a HAP Contract through use of the HACC voucher, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's individual application was in fact denied by the City's Section 8 Program.  The parties do not contest the other three elements, therefore Plaintiff has proven a prima facie case of discrimination.  However, that alone is insufficient to survive a motion for summary judgment if the Defendant can articulate a legitimate, non-discriminatory reason for its action.

There is no dispute that Defendant had two options in determining how to provide a voucher for housing assistance to Plaintiff.  Defendant could have approved Plaintiff's individual application or Defendant could have ported Plaintiff's voucher from HACC.  Plaintiff had begun both the individual application process as well as the porting process.  Defendant argues that it was faced with an option to port the HACC voucher, by which HACC would pay

19

the subsidy, or grant Plaintiff's individual application which would have reduced the Programs ability to provide funding to other eligible families. (Def.'s Response, Dkt. No. [132] at 4). Defendant argues that it made a non-discriminatory administrative decision between two means of providing housing assistance to Plaintiff. Since the Defendant has articulated a non-discriminatory reason for denying Plaintiff's individual application, she must present evidence by which a reasonable jury could find that Defendant's stated reasoning is mere pretext. See Chapman v. AI Transport, 229 F.3d 1012, 1025 n.11 (11thCir. 2000) (en banc) ("If the plaintiff does not proffer sufficient evidence that the defendant's stated reasons are pretextual, the plaintiff still may not be entitled to take his case to a jury.")

While Defendant's assertion for choosing to port the HACC voucher is reasonable, the Court finds that in viewing the facts in a light favorable to Plaintiff, a reasonable jury could find that Defendant discriminated against or retaliated against Plaintiff in its treatment of her in the application process and in its rejection of her individual application, and that their asserted reasoning is mere pretext. Plaintiff alleges that she was harshly confronted by Ms. Bowens and "told that the city knew all about Plaintiff and her son and that he would not be allowed to live in the household with her under any sort of voucher," despite

the fact that Defendant knew that the voucher for her son was transferred to her as head of household. (Pl.'s Response, Dkt. No. [130] at 20-21). Plaintiff was also subjected to an onerous fingerprinting process and was required to have family members unnecessarily attend certain meetings. (Id. at 21-22).

This evidence presents a genuine issue of material fact as to whether Defendant's stated reason for denying Plaintiff's individual application is mere pretext and whether Plaintiff was discriminated or retaliated against as a result of her or her son's disability. Therefore, Defendant's Amended Motion for Summary Judgment [121] as to Plaintiff's FHA claims is **DENIED**.

## Conclusion

For the aforementioned reasons, Plaintiff's Motion for Partial Summary Judgment [115] is **DENIED**, Defendant's Motion for Summary Judgment [119] is **DENIED AS MOOT**, and Defendant's Amended Motion for Summary Judgment [121] is **GRANTED IN PART AND DENIED IN PART**.

Counsel shall confer and submit to the Court a Proposed Consolidated Pretrial Order within thirty (30) days of the entry of this Order.

**SO ORDERED**, this __22nd__ day of March, 2010.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)